41   43
60L 215

Jacob H. Chamberlain et al.

*v.*

The Elizabethport Steam Cordage Company et al.

A provision in a municipal charter that the common council may authorize the laying of railroad tracks in the streets of the city, upon the consent of the majority of the land-owners on such street thereto, does not sanction a track laid under a city ordinance (but without the consent of an abutting land-owner), by a manufacturing company through a street to their works, to be used as a steam road, the city charter containing no provision for condemnation of land for such road.

Bill for relief.    On final hearing on pleadings and proofs.

*Mr. R. V. Lindabury,* for complainants.

*Mr. J. Alward,* for defendants.

The Chancellor.

The bill states that the complainants are, and have been for at least three years past, the owners in fee of a lot of land at the corner of Elizabeth avenue and Butler street, in the city of Elizabeth, on which are two houses and a barn ; that the defendants have begun to build in that city a railroad for cars to be drawn by steam locomotive engines, which is to run from the defendant's land near Smith street (which is the next street parallel to Butler street on the southeast) through and upon Smith street to Elizabeth avenue ; thence along and upon the avenue to Butler street, and in front of the complainants' land, to a point about one hundred feet from the corner of that street and the avenue ; and that the complainants' property has a frontage on Butler street of about one hundred and thirty-five feet, and on Elizabeth avenue of about seventy-six feet.    The defendants' property is on the opposite corner of the avenue and Butler street.    The bill alleges that if the road be constructed as proposed, it will be laid upon the land of the complainants in front

Chamberlain v. Elizabethport Cordage Co.

of their lot in and constituting part of the street, and will do great damage to the complainants' property. The defendants, by their answer, admit that they have begun to build the road as stated in the bill and substantially admit also that they intend, if not prevented from doing so, to complete and operate the road; the cars upon which are to be drawn by steam locomotives. They deny that the road or the operation thereof as proposed will injure the complainants' property, and they claim that they have a lawful right to lay the track and operate the road under authority given them to do so, by ordinance by the city of Elizabeth.

The complainants' land is bounded in their deeds therefor on two sides by the side lines of Elizabeth avenue and Butler street, respectively. By legal presumption they own the land in front of their property to the middle of the street, subject to the right of way.

The imposition of the burden of a railroad operated by steam, upon the latter land (in and constituting part of the street) is a taking of their property for that purpose, and it cannot be lawfully taken for such use, if private, without their consent. Nor can it be lawfully taken for such use if public, without due compensation. *Starr* v. *Camden and Atlantic R. R. Co., 4 Zab. 592; Hinchman* v. *Paterson Horse R. R. Co., 2 C. E. Gr. 75.*

The defendant company is not a railroad company, but is a manufacturing firm called the Elizabethport Cordage Company, and the other defendants are the individuals who compose that firm. They have no authority to lay and operate the road except that given by the city ordinance before mentioned. In *Montgomery* v. *Trenton, 7 Vr. 79,* the city of Trenton had given permission by ordinance to certain persons to lay for their private use a railroad track at grade across a public street. It was held that the city had no authority, under the general power in its charter to regulate streets, to make the grant. But by the charter of the city of Elizabeth the city council has power not only to pass ordinances to regulate the streets but also to grant to corporations or persons the right to lay down railroad tracks in the streets, highways and alleys, and to regulate the running of cars thereon,

provided that no such right shall ever be given by the city council until a majority of the owners of the lands in front of any such railroad, and along which the same may be intended to be run or be constructed, shall first consent, in writing, to the laying and constructing thereof, such consent to be filed in the clerk's office of the city before making the grant. *P. L. of 1863 p. 119.* The defendants insist that, under that provision of the charter, the city has authority to grant the right to lay in the street the tracks of railroads to be operated by steam. But the charter makes no provision for compensation to the owners of the land upon which the railroads may be laid. Hence, it is to be presumed that the legislature did not intend to give authority to the city to exercise the right of eminent domain. *Carson v. Coleman, 3 Stock. 106 ; Boston and Lowell R. R. Corp. v. Salem and Lowell R. R. Co., 2 Gray 1 ; Mills on Em. Dom. § 128.* The legislature itself has no power to take private land for public use without providing for compensation. It is probable that the grant in the charter of the power to authorize the laying of railroads has reference to horse railroads merely. The complainants are entitled to the protection of this court against the unlawful taking of their property. There will be a decree accordingly.